UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM B. WALLACE, et al.,

                Plaintiffs,

v.

GREYSTONE AT THE HIGHLANDS
ASSOCIATION, et al.,

                Defendants.

_____/

Case No. 1:19-cv-1045

Honorable Hala Y. Jarbou

## OPINION

Before the Court are two motions to dismiss brought by the two sets of Defendants in this case. The case centers on whether Plaintiffs William and Sandra Wallace are entitled to the exclusive use of a strip of pavement that lies between the respective driveways of Plaintiffs and their neighbors ("Disputed Area"). To establish that right, Plaintiffs have sued their neighbors, Defendants Mary and David Parker, as well as the condominium association and its affiliated leadership: Defendants Greystone at the Highlands Association, Charles Keys, Anthony Ryner, and Paul Kaplan (collectively, the "Greystone Defendants"). The Wallaces brought thirteen claims, twelve state and one federal. (First Am. Compl., ECF No. 14.) Their federal claim is based on alleged violations of the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601 *et seq.* The Parkers moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 16.) The Greystone Defendants moved to dismiss the case for lack of subject matter jurisdiction. (ECF No. 19.) The Court will grant the Parkers' motion to dismiss and grant the Greystone Defendants' motion in part.

## I. BACKGROUND

Plaintiff William Wallace owns a condo unit in the Greystone at the Highlands community. (First. Am. Compl. ¶ 4.)  He and his wife Sandra reside in the condo part-time.  (*Id.* ¶ 5.)  The Parkers own the condo across from the Wallaces.  (*Id.* ¶ 8.)  Keys, Ryner, and Kaplan are the President, Treasurer, and Secretary of the Greystone Association, respectively.  (*Id.* ¶¶ 9-11.)

Sandra Wallace experiences "vascular dementia and partial paralysis/impaired motility/loss of balance as a result of one or more strokes."  (*Id.* ¶ 12.)  As a result, she is unable "to ambulate without assistance" and is frequently transported by wheelchair to the Wallaces' cars whenever they enter or leave their condo.  (William Wallace Decl. ¶¶ 6, 9-10, ECF No. 22-1.) Plaintiffs allege that Sandra can only safely embark and disembark vehicles in the Disputed Area, as it is flat, while Plaintiffs' driveway is at an incline.  (*Id.* ¶ 9.)  According to William Wallace, if he cannot regularly park in the Disputed Area, then "Sandra will effectively become homebound." (*Id.* ¶ 11.)  The Wallaces allege that the Disputed Area is a "limited common element" which they have the exclusive right to use.  (First Am. Compl. ¶ 1.)

Plaintiffs therefore claim that the Parkers are forbidden to park in the Disputed Area, as they have done from time to time.  (*See id.* ¶ 33.)  On their part, the Parkers have denied that the Wallaces enjoy a limited common element in the Disputed Area.  (*Id.*)  This disagreement allegedly came to a head in July 2018, when Mary Parker "in a fit of rage . . . verbally and physically assaulted Sandra Wallace" in the Wallace driveway while William and his son "were holding up a clearly disabled Mrs. Wallace."  (William Wallace Decl. ¶¶ 1-2.)  David Parker apparently observed the altercation from the Parkers' house and was also able to see that Sandra could not stand on her own.  (*Id.* ¶ 3.)  Though not expressed in their complaint, the Wallaces further contend that "it may be inferred . . . that the Parkers have indirectly engaged in . . . [misconduct] by

pressuring the [Greystone] Association . . . to deny the Wallaces' requests" for accommodations. (Pls.' Br. in Opp'n to Parkers' Mot. to Dismiss, ECF No. 22, PageID.543.)

That request for an accommodation refers to the Wallaces' petition to the Greystone Association to have the Disputed Area labeled as a limited common element subject to the Wallaces' exclusive use.  (*See* First Am. Compl. ¶¶ 33-36, 40.)  Plaintiffs allege that this constituted a request for a "reasonable modification and/or accommodation" given Sandra's disability.  (*Id.* ¶ 40.)  The Greystone Defendants refused to label the Disputed Area as a limited common element.  (*Id.*) The Wallaces subsequently sued both the Parkers and the Greystone Defendants.

## II. STANDARDS

### A.  Failure to State a Claim

When considering a motion to dismiss brought under Rule 12(b)(6), courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . .  Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth."

*Id.* (citing *Twombly*, 550 U.S. at 555-56). Hence, courts will ignore conclusory assertions and, accepting well-pleaded factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.* If the court decides that there is no plausible claim to relief, then the motion to dismiss will be granted.

### B.   Lack of Subject Matter Jurisdiction

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). Facial attacks are reviewed under the same standard as is applied to a Rule 12(b)(6) motion: the court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint. *Id.* No presumption of truth applies in a "factual attack" on subject matter jurisdiction. *Id.* Factual attacks challenge the actual existence of matters affecting jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To resolve a factual attack, "'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Mortensen v. First Fed. Savings & Loans Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). The plaintiff bears the burden of proof of jurisdiction when a factual attack is made. *Id.*

## III. ANALYSIS

### A.  Parkers' Motion to Dismiss

Plaintiffs allege the Parkers violated sections 3604(f)(2) and 3617 of the FHAA.  Their section 3604(f)(2) claim is based on disparate treatment and disparate impact. The Wallaces' allegations, if true, do not give rise to a violation of the FHAA.  They have failed to state a claim.

1.  Section 3604(f)(2) disparate treatment claim

The FHAA prohibits "discrimin[ation] against any person in the terms, conditions, or privileges of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2).  "Plaintiffs who allege a violation of 42 U.S.C. § 3604(f) may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodations."  *Smith & Lee Assocs. v. City of Taylor, Mich.*, 102 F.3d 781, 790 (6th Cir. 1996).  A successful disparate treatment claim requires the plaintiff to "show proof of intentional discrimination."  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012).  Thus, "analysis of such a claim focuses on the defendant's intent."  *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 539 (6th Cir. 2014).

Plaintiffs' allegations regarding the July 2018 altercation with Mary Parker are insufficient to make out a claim of disparate treatment.  The confrontation concerned the Wallaces' use of the Disputed Area.  (First Am. Compl. ¶ 43.)  Plaintiffs do not allege any connection between the parking dispute and Sandra's disability.  All the Wallaces have alleged is that Mary and David saw that Sandra could not stand on her own when Mary allegedly assaulted her.  (William Wallace Decl. ¶¶ 1-2.)  This does not show that the altercation was about discriminatory animus rather than a disagreement over parking rights.  Far more egregious conduct must be alleged to demonstrate discriminatory intent.  *See, e.g.*, *Francis v. Kings Park Manor, Inc.*, 917 F.3d 109, 114-15 (animus

where defendant made multiple violent threats on multiple occasions while using slew of racist and anti-Semitic epithets); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004) (animus where vandalism included writing referencing plaintiff's Jewish faith on plaintiff's wall).

2. Section 3604(f)(2) disparate impact claim

As an initial matter, the Court is unable to locate a single case supporting Plaintiffs' implied proposition that the Parkers – their neighbors – are appropriate targets of a disparate impact claim. The Court does not understand the basis for Plaintiffs' apparent belief that the Parkers could be liable for such a claim.  If disparate impact actions cannot be brought against neighbors, then the Wallaces' claim must be dismissed.  Assuming the Parkers could be sued by their neighbors for disparate impact, the claim would still be dismissed because Plaintiffs have failed to make allegations speaking to each element of a disparate impact action.  Since this claim is subject to dismissal either way, the Court will assume without deciding that the Parkers may be held liable for disparate impact.

A disparate impact claim turns on "the broader effects of the disputed housing practice" rather than the defendant's subjective intent.  *Hollis*, 760 F.3d at 539. Crucially, "to show a disparate impact, a plaintiff must demonstrate that a facially neutral policy or practice has the effect of discriminating against a protected class of which the plaintiff is a member." *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Relations Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007).

Plaintiffs' complaint is devoid of allegations that anyone other than Sandra is affected by the Parkers' challenged conduct.  Only two allegations conceivably deal with disparate impact, and they both claim that the Parkers' actions had "a disproportionately adverse effect on [Sandra's]

6

ability to use and fully enjoy the premises." (First Am. Compl. ¶¶ 41, 47.) No allegations relate the Parkers' activity to broader effects on disabled people as a class compared to non-disabled people. The complaint solely deals with the Parkers' impact on the Wallaces. They have failed to allege a disparate impact claim.

### 3. Section 3617 claim

Section 3617 of the FHAA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected by the FHAA. As with disparate treatment claims, a successful section 3617 claim requires proof of discriminatory intent. *HDC*, 675 F.3d at 613-14.

Plaintiffs' section 3617 claim fails for the same reason their disparate treatment claim fails: they have not provided any allegations sufficient to infer that the Parkers acted with discriminatory intent. It is not enough that the Parkers allegedly misbehaved or sought to use the Disputed Area for their own benefit; the Wallaces must show that they did so *because of* Sandra's disability. *Cambell v. Robb*, 162 F. App'x 460, 473 (6th Cir. 2006) (citing *United States v. City of Birmingham*, 727 F.2d 560, 565-66 (6th Cir. 1984)). Verbal confrontations and pressuring the Greystone Association to side against the Wallaces fall far short of this requirement. Plaintiffs' claims against the Parkers must be dismissed.

### B. Greystone Defendants' Motion to Dismiss

Plaintiffs also bring a section 3604 claim against the Greystone Defendants. The basis of their claim is that the Greystone Defendants knew that Sandra was disabled but nevertheless denied the Wallaces' request for a reasonable accommodation that was necessary to "afford Mrs. Wallace the full enjoyment" of their condo. (First Am. Compl. ¶ 45.)

7

Under section 3604(f)(2), it is unlawful to "refuse[] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [someone an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(2). "The 'three operative elements' of the FHAA's reasonable accommodation requirement are 'equal opportunity,' 'necessary,' and 'reasonable.'" *Anderson v. City of Blue Ash* 798 F.3d 338, 360 (6th Cir. 2015) (quoting *Smith & Lee Assocs.*, 102 F.3d at 794).

The equal opportunity and necessity elements are "closely related." *Id.* A plaintiff "must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Smith & Lee Assocs.*, 102 F.3d at 795. An accommodation is necessary where it would enable a plaintiff to receive "the same enjoyment from the property as a non-disabled person would receive." *Hollis*, 760 F.3d at 541. And equal enjoyment is "achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her resident as a non-disabled person could." *Anderson*, 798 F.3d at 361 (citing *Hollis*, 760 F.3d at 541). The availability of alternative measures does not invalidate the accommodation sought by a plaintiff so long as the requested accommodation is necessary and would provide equal enjoyment. *Id.*

Here, Plaintiffs claim that they need exclusive use of the Disputed Area because, without such an accommodation, "Sandra will effectively become homebound." (William Wallace Decl. ¶ 11.) Hence, they argue that use of the Disputed Area is necessary to afford Sandra equal enjoyment of her home as would be enjoyed by a non-disabled person needing less space to get into and out of vehicles at their house. (*Id.* ¶¶ 9-11.) This allegation is significantly undercut by video and photographic evidence. (April 8, 2020 Photos, ECF No. 25-3; March 27, 2020 Video, ECF No. 25-4.) The exhibits show Sandra embarking and disembarking from vehicles parked

entirely within the Wallaces' driveway, and thus outside the Disputed Area, on two separate occasions.  Notably, both exhibits also show that no cars are parked in the Disputed Area while William was helping Sandra into and out of their vehicle.  In other words, on at least two occasions, the Wallaces could have used the Disputed Area when Sandra was embarking or disembarking a car, but they chose not to.

This evidence, which stands in stark contrast to William's sworn affidavit (ECF No. 22-1), calls into question the merits of Plaintiffs' FHAA claim.  It does not, however, undermine the subject matter jurisdiction of this Court to hear an alleged FHAA claim.  The Greystone Defendants seek to have the claim dismissed for lack of subject matter jurisdiction, and not for failure to state a claim.  They bring a factual attack on the Wallaces' complaint; that is, rather than questioning the sufficiency of Plaintiffs' allegations, the Greystone Defendants argue that certain factual predicates to this Court's jurisdiction do not exist.  Many cases illustrate the use of factual attacks in 12(b)(1) motions.  *See, e.g.*, *RMI Titanium Co.*, 78 F.3d at 1135  (proper factual attack to show plaintiff's claims contractual in nature and thus preempted by statute); *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 326 (factual attack to determine whether statute of limitations barred suit).  However, the Greystone Defendants' reliance on such cases is misplaced.

Unlike the cases to which they cite, here the Greystone Defendants are really challenging the merits of Plaintiffs' claim rather than this Court's jurisdiction to hear it.  "Just as the proper characterization of a question as jurisdictional rather than procedural can be slippery, the distinction between jurisdictional and merits issues is not inevitably sharp, for the two inquiries may overlap."  *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1987 (2017) (citing *Shaof v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001).  The Greystone Defendants contend that Plaintiffs' requested accommodation is not "necessary" within the meaning of the FHAA, that the condo

9

association proposed suitable alternative accommodations, and that they were not on notice of Sandra's disability.  (Defs.' Mot. to Dismiss, PageID.446.)  All that may be true, but such issues speak to the merits of Plaintiffs' case rather than the jurisdiction of this Court to hear an FHAA claim.

Taking the Greystone Defendants' argument to its logical conclusion reveals that they are challenging the merits of the Wallaces' case instead of jurisdiction.  For example, assume the FHAA claim went to trial solely on the issue of whether Plaintiffs' exclusive use of the Disputed Area was truly "necessary" within the meaning of the FHAA and that the jury found against the Wallaces.  Would such a finding mean that this Court lacked subject matter jurisdiction over the case from the beginning?  Surely not.  The issues raised by the Greystone Defendants are ones of merit, not jurisdiction.  Plaintiffs have alleged that they need exclusive use of the Disputed Area to accommodate Sandra's disability, and that the condo association denied the Wallaces' request with full knowledge of Sandra's reduced mobility.  The Greystone Defendants are challenging the veracity of those allegations.

However, the truth or untruth of the challenged allegations ultimately speak to the merits of the case rather than jurisdiction.  It is therefore inappropriate for the Court to undertake extensive factual review in deciding the Greystone Defendants' Rule 12(b)(1) motion.  Plaintiffs have provided allegations sufficient to confer the Court jurisdiction to hear their purported FHAA claim.

### C.  State Claims

#### 1.  Against the Parkers

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 551 U.S. 375, 377 (1994).  By statute, federal district courts are granted original jurisdiction

10

over all "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Except in narrow instances, federal courts lack jurisdiction to adjudicate claims based in state law.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).  Diversity jurisdiction grants federal courts authority to hear state claims so long as each plaintiff resides in a different state from each defendant and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Federal courts may also exercise supplemental jurisdiction over state claims where the court has original jurisdiction with respect to some claims and the state claims "are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Relatedness exists where "the state and federal claims . . . derive from a common nucleus of operative fact."  *Gibbs*, 383 U.S. at 725.

Where, as here, adjudication of a pre-answer motion to dismiss leaves the plaintiff without any federal causes of action, courts should not exercise supplemental jurisdiction over the state claims.  *See Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  Because this court will dismiss Plaintiffs' FHAA claim against the Parkers, it will not exercise jurisdiction over any of Plaintiffs' state law claims against the Parkers.  Therefore, the state law claims against the Parkers will be dismissed.

## 2.  Against the Greystone Defendants

In deciding whether to exercise supplemental jurisdiction, courts should weigh various factors, including "judicial economy, convenience and fairness to litigants."  *Gibbs*, 383 U.S. at 726.  Nevertheless, the state and federal claims must still share "a common nucleus of operative fact" and "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 725-26; *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.

1993) (courts should avoid needlessly deciding state law issues) (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).  Under 28 U.S.C. § 1367(c)(2), courts "may decline to exercise supplemental jurisdiction over a claim if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

Plaintiffs bring nine state law claims (Counts II-VI, X-XIII) against the Greystone Defendants. Count II alleges a violation of a parallel state law forbidding discrimination against persons with disabilities.  Count III seeks a declaration from the Court that the Disputed Area be recorded as a limited common element appurtenant to the Wallaces' condo in the Emmet County Register of Deeds.  Counts IV-VI and X-XIII state various claims rooted in condo law or relating to the Greystone Defendants' failure to properly recognize the Disputed Area as a limited common element of the Wallaces' condo.

Except for Count II, all of Plaintiffs' state claims substantially predominate over their FHAA action.  The FHAA claim and Count II simply ask whether federal and state law require that the Wallaces' receive their requested accommodation, regardless of any rights or obligations of other parties.  Put another way, relief under the FHAA claim and Count II does not require a court order decreeing that the Disputed Area be permanently committed to exclusive use by the present and future owners of the Wallaces' condo, nor is their relief contingent upon proving the legal status of the Disputed Area under state law.

The remaining state claims, on the other hand, all turn on whether the Disputed Area is or should be a limited common element appurtenant to the Wallaces' condo.  The latter issue involves resolving all kinds of factual disputes (was the Disputed Area always intended to be appurtenant to the Wallaces' condo?) and legal questions (are there violations of Michigan condo law?) that need not be addressed in the slightest to adjudicate the FHAA claim.  There is not enough of a

"common nucleus of operative fact" here, and the Court would risk "needlessly deciding state law issues" if it took up all of Plaintiffs' state claims.  *Gibbs*, 383 U.S. at 725-26.  Moreover, Counts III-VI and X-XIII predominate the FHAA claim.  *See James v. Sun Glass Hut, Inc.*, 799 F. Supp. 1083, 1085 (D. Colo. 1992) (various state contract claims predominated single federal employment discrimination claim). The Court will therefore decline to exercise supplemental jurisdiction over Counts III-VI and X-XIII.

### IV. CONCLUSION

For the reasons stated, the Parkers' motion to dismiss (ECF No. 16) will be granted.  The Greystone Defendants' motion to dismiss (ECF No. 19) will be denied in part and granted in part. The Court will not dismiss Plaintiffs' FHAA claim against the Greystone Defendants for lack of subject matter jurisdiction, but will decline to exercise supplemental jurisdiction over Counts III-VI and X-XIII.  An order will enter in accordance with this Opinion.


Dated:   November 16, 2020              /s/ Hala Y. Jarbou
                                        HALA Y. JARBOU
                                        UNITED STATES DISTRICT JUDGE